

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 0261 | **DATE** | May 23, 2002 |
| **CASE TITLE** | *Marcus v. West, et al.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum and Order, Defendant's Motion for Summary Judgment [41-1] is GRANTED IN PART as to Counts II and III AND DENIED IN PART as to Count I.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

RTS

courtroom deputy's initials

JUN 03 2002 date docketed

U.S. DISTRICT COURT

02 MAY 31 AM 9:21

FILED-EOD 10

Date/time received in central Clerk's Office

number of notices

date mailed notice

docketing deputy initials

mailing deputy initials

**Document Number**

46

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

EDDIE MAE MARCUS,                          )
                                           )
        Plaintiff,                      )
                                           )      Hon. Blanche M. Manning
    v.                                    )
                                           )      Case No. 99 C 0261
TOGO D. WEST, JR., Secretary of Veterans   )
Affairs, JOHN J. DeNARDO, Director of      )
Edward J. Hines Jr. Hospital, and SHARON   )
FIRLIT ZANDELL, Director of Health Care    )
Education, Edward J. Hines, Jr. Hospital,  )
                                           )
        Defendants.                     )

DOCKETED
JUN 3 2002

## MEMORANDUM AND ORDER

      Plaintiff Eddie Mae Marcus filed this action, pursuant to Title VII of the Civil Rights Act

of 1964, 42 U.S.C. 2000e et seq., alleging that Defendants discriminated against her and created

a hostile work environment based on her race (Count II) and religion (Count III) and that she was

retaliated against (Count I) for filing a discrimination complaint with the Department of Veterans

Affairs, Office of Employment Discrimination Complaint Adjudication ("the Department"). The

instant matter comes before the Court on Defendant Secretary of Veterans Affairs' ("the

Secretary") Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56.[1]

For the following reasons, the Secretary's Motion for Summary Judgment is GRANTED IN

PART as to Counts II and III AND DENIED IN PART as to Count I.

---

[1]    Although the Motion for Summary Judgment is styled as being brought by the Secretary, and does not specifically state that it is brought by the other two Defendants, because it addresses allegations against the other Defendants, the Court will treat it as a motion for summary judgment for the claims against all three Defendants.

# BACKGROUND[2]

Ms. Marcus has been employed by the Veteran's Administration ("VA") as a secretary in the Health Care Education Services Department ("HCESD") of the Edward J. Hines, Jr. Hospital ("Hines Hospital") since 1996, and has worked for the VA since 1978. Ms. Marcus is an African-American and a Sanctified Pentecostal Christian. Her supervisor, Dr. Sharon Firlit Zandell, Ph.D., who is the Director of the HCESD, is a Caucasian and a Roman Catholic. The other clerical employee assigned to HCESD, Vivian Svaldi, is also a Caucasian and a Roman Catholic, as is Joann Jaycox, the Coordinator of the HCESD.

Dr. Zandell supervises both Ms. Marcus and Ms. Svaldi and, along with Ms. Jaycox, is responsible for allocating work to each. This situation appears to have led to Ms. Marcus having multiple assignments, sometimes with conflicting deadlines, and to a lack of clear priorities in her assignments. Ms. Jaycox has had difficulty in assigning Ms. Marcus work, and, on at least one occasion, they have had a heated argument about work distribution. During one incident, Ms. Jaycox became fearful of Ms. Marcus and called the Hines Hospital Police.

Though Ms. Marcus and Ms. Svaldi both perform clerical functions, they have different titles and pay grades. Ms. Marcus is a "secretary" and is paid on general scale five (GS–5), while Ms. Svaldi is a "clerk typist" and is paid on the lower GS–4 scale. Their job descriptions differ mainly in the areas of the department which they are assigned to support. Ms. Marcus is

---

[2] The facts in the Background section are derived from the parties' Local Rule 56.1 statements and other pleadings. The facts in the Secretary's Local Rule 56.1(a)(3) statement that Ms. Marcus did not controvert in her Local Rule 56.1(b)(3)(A) statement are deemed admitted for purposes of this motion. Schultz v. Serfilco, Ltd., 965 F.2d 516, 519 (7th Cir. 1992). Likewise, the facts that Ms. Marcus provides in her Local Rule 56.1 statement that the Secretary did not controvert are also deemed admitted. Id.

responsible for the affiliation program for nursing students, including student contact, tuition reimbursement, and continuing education, whereas Ms. Svaldi is responsible for the orientation program.

Ms. Marcus contends that Dr. Zandell was prejudiced against her because of her race (African-American) and her religion (Sanctified Pentecostal). Because of this prejudice, Ms. Marcus alleges that Dr. Zandell discriminated against her by unjustly allocating work to her, delaying her performance evaluations, preventing her from receiving performance-based bonuses by giving her low performance ratings, preventing her from taking advantage of training opportunities within Hines Hospital, and thwarting her attempts to transfer out of the HCESD. Furthermore, Ms. Marcus alleges that Ms. Jaycox harassed and discriminated against her by calling the police in response to the altercation described above.

In April, 1997, Ms. Marcus complained of this perceived discriminatory behavior to Dr. Zandell and demanded changes in her work environment, a clarification of her duties, and a new manner of assigning her duties which would prioritize work and deadlines. Despite airing her grievances, Ms. Marcus felt that her work situation had not improved and took her complaint to the head of the Research and Education Service, Dr. Victor Terranova. Dr. Terranova arranged for a temporary transfer of Ms. Jaycox and told Ms. Marcus that she could transfer to another area of the hospital, but that, due to a budget freeze, she could do so if only she was willing to take a temporary position which would make her subject to "bumping" during a reduction in force. Ms. Marcus declined to accept such a position. Dr. Terranova also instructed Dr. Zandell to contact Ms. Olivia Garth in Hines Hospital's EEO/Affirmative Action department.

Pursuant to Dr. Terranova's request, Dr. Zandell contacted Ms. Garth, who conducted an

3

investigation, interviewed the parties, and attempted to mediate a resolution to Ms. Marcus'

complaints. Based on her investigation and attempts at mediation, she concluded that the

problems in the HCESD stemmed from a failure of communication between those who worked

there and Dr. Zandell's abrupt style of communicating and managing her employees. She

negotiated a temporary truce between the women, but this did not hold. Ms. Marcus alleges that,

in her attempts to mediate, Ms. Garth exploited Ms. Marcus' religious beliefs by asking her,

along with Dr. Zandell and Ms. Jaycox, to swear on a Bible to resolve their differences. Ms.

Garth denies using a Bible in her mediation attempts.

Ms. Marcus subsequently contacted another VA EEO counselor about her desire to

transfer to another area of Hines Hospital, and on August 26, 1997, filed her first discrimination

complaint with the Department. After the investigation that followed, the Department reached

substantially the same conclusions as Ms. Garth – that the problems in the HCESD stemmed

from a lack of communication and from Dr. Zandell's abrupt style of management.

In December, Ms. Marcus filed a second complaint with the Department, alleging that she

was retaliated against for filing her initial discrimination complaint. After filing her initial

complaint, Ms. Marcus made repeated but unsuccessful attempts to transfer out of the HCESD to

another position within Hines Hospital or to another government agency. Ms. Marcus contends

that her inability to transfer was due either to prejudice against her because of her race or religion

or to her filing of a discrimination complaint with the Department.

After the Department investigated both of her complaints, it notified Ms. Marcus in

writing of her right to request either a hearing before an ALJ followed by a final decision by the

Department, or a final decision by the Department without a hearing. Ms. Marcus failed to

respond to the Department's notification of her right to a hearing, and therefore, her complaints

were submitted to the Department for a final agency decision based on the investigative record.

After reviewing the investigative record, ALJ Charles R. DeLobe, issued a "Final Agency

Decision" concluding that Ms. Marcus had not been harassed or discriminated against on the

basis of race, religion, or disability, or retaliated against for filing a discrimination complaint

with the Department.

Ms. Marcus subsequently filed this suit in January, 1999, alleging that Defendants

discriminated against her and created a hostile work environment based on her race (Count II)

and religion (Count III) and that she was retaliated against (Count I) for filing a complaint with

the Department regarding the alleged discrimination.[3]

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23; Cheek v.

Western & Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994). A genuine issue of material

fact is one that might affect the outcome of the lawsuit, and factual disputes that are irrelevant

will not be considered. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In

determining whether a genuine issue of material fact exists, the court must construe the alleged

facts in a light most favorable to the party opposing the motion. U.S. v. Diebold, Inc., 369 U.S.

---

[3]     In contrast to her complaint with the Department, Ms. Marcus' Second Amended
Complaint does not allege discrimination based on her alleged disability. The Court will thus not
address this issue.

654, 655 (1962); <u>Dale v. Chicago Tribune Co.</u>, 797 F.2d 458, 460 (7th Cir. 1986).

The moving party carries the initial burden of establishing that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c); <u>Celotex Corp.</u>, 477 U.S. at 323. Once the moving party has met its burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); <u>Becker v. Tennenbaum Hill Assoc., Inc.</u>, 914 F.2d 107, 110 (7th Cir. 1990). The nonmoving party must do more than "show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986), and may not merely rest upon the allegations or denials in its pleading, but instead must "set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 248. If the evidence presented is "merely colorable" or is not "significantly probative," summary judgment may be granted. <u>Id.</u> at 250-51 (citations omitted). The court considers the record as a whole, and draws all reasonable inferences in the light most favorable to the nonmoving party. <u>Regner v. City of Chicago</u>, 789 F.2d 534, 536 (7th Cir. 1986).

Courts are cautious in granting summary judgment in employment discrimination cases because often issues of intent and credibility are involved. <u>Sarsha v. Sears, Roebuck & Co.</u>, 3 F.3d 1035, 1038 (7th Cir. 1993); <u>McCoy v. WGN Continental Broadcasting Co.</u>, 957 F.2d 368, 370-71 (7th Cir. 1992). Summary judgment is inappropriate if the court must balance conflicting indications of motive and intent. <u>Stumph v. Thomas & Skinner, Inc.</u>, 770 F.2d 93, 97 (7th Cir. 1985). An employer can only prevail at the summary judgment stage if the record shows that a reasonable trier of fact must conclude that the employment decision was not based on discrimination. <u>Veprinsky v. Fluor Daniel, Inc.</u>, 87 F.3d 881, 893-94 (7th Cir. 1996).

## ANALYSIS

The Secretary has moved for summary judgment of Ms. Marcus' Second Amended Complaint on the grounds that Ms. Marcus has failed to make a prima facie showing that: (1) she suffered adverse employment action or a hostile work environment; (2) the Secretary treated similarly situated individuals more favorably; (3) there was a causal link between her protected activity and any employment action; and (4) the Secretary's explanations are pretextual. The Court will address each of these contentions as they apply to Ms. Marcus' allegations of: (I) discrimination; (II) hostile work environment; and (III) retaliation.

## I.    Racial and Religious Discrimination

To establish a prima facie case of race and religious discrimination, a plaintiff must show that: (1) she belongs to a protected group; (2) she performed her job satisfactorily; (3) she was subjected to an adverse employment action; and (4) the employer treated similarly situated employees more favorable.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Johnson v. City of Fort Wayne, Ind., 91 F.3d 922, 931 (7th Cir. 1996).  Here, there is no dispute that Ms. Marcus is a member of a protected group (African-American and Sanctified Pentecostal Christian) and that she performed her job satisfactorily. Therefore, the Court will only examine the last two prongs of the McDonnell Douglas requirements.

Adverse employment action has been broadly defined by the Seventh Circuit, and is not limited to actions with an economic effect on the plaintiff.  Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996). This inclusive definition, however, is not without limit.  "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial

7

employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'" Id. (quoting Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996)). Thus, while an employee's subjective experience is not unimportant to this analysis, neither is it the defining variable in determining whether retaliation has occurred. Uhl v. Zalk Josephs Fabricators, Inc., 121 F.3d 1133, 1137 (7th Cir. 1997) ("Facts, not an employee's perceptions and feelings, are required to support a discrimination claim").

Moreover, poor treatment of an employee alone is not enough to establish that the employer is discriminating or retaliating against the employee. As noted by the Seventh Circuit, "Title VII is not directed against unpleasantness per se but only ... against discrimination in the conditions of employment." Carr v. Allison Gas Turbine Div., Gen. Motors Corp., 32 F.3d 1007, 1009 (7th Cir. 1994). Courts "are in no position to measure, or much less evaluate, whether an employer speaks to its workers too harshly." Robin v. Espo Engr. Corp., 200 F.3d 1081, 1091 (7th Cir. 2000). Instead, courts are "'empowered to decide legal issues' alone, and not the 'troubling social as well as ethical questions that go well beyond the legal issues' ..." and must instead leave "these 'greater social questions' to be 'decided by the political branches of government.'" Id. at 1092. Moreover, in evaluating an employer's conduct, a court may not sit as a "'super-personnel department,'" but must limit itself to determining whether the employee's protected conduct was a "substantial or motivating factor" in the employer's decision to take the adverse action alleged. Stagman v. Ryan, 176 F.3d 986, 1002 (7th Cir. 1999) (citation omitted).

In addition, the plaintiff must show that similarly situated employees were treated differently. Radue v. Kimberly-Clark Corp., 219 F.3d 612, 618 (7th Cir. 2000). This requirement is crucial, because "without it a plaintiff would only have to point to one ... employee who was

treated better than he ... [which] would be meaningless, especially with respect to large corporations ..." Id. at 619. To meet the "similarly situated requirement, the plaintiff must show that "there is someone who is directly comparable to her in all material respects." Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002). In determining whether other employees are "similarly situated," the court "must look to all relevant factors," the number of which depend on the context of the case. Radue, 219 F.3d at 617. Some of the relevant factors include whether the employees "dealt with the same supervisor," "subject to the same standards," and whether they had comparable "experience, education and qualifications," provided that the employer took these factors into account when making employment decisions. Id. at 617-18.

Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its conduct. McDonnell Douglas, 411 U.S. at 802-03. The defendant's burden at this point is one of production only, not one of persuasion. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142 (2000). To satisfy this burden, the defendant need only offer "admissible evidence which would allow the trier of fact to rationally conclude that the employment decision had not been motivated by discriminatory animus." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 257 (1981). By meeting its burden of production, the burden shifts back to the plaintiff, who must then prove that the proffered reason is false or pretextual. McDonnell Douglas, 411 U.S. at 804-05.

To show a legitimate, non-discriminatory reason for its conduct, a defendant need not show that it had a good reason for its conduct, but only that its reason was not discriminatory. Timm v. Mead Corp., 32 F.3d 273, 275 (7th Cir. 1994). "Thus, when all legitimate reasons for

9

rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with some reason, based his decision on an impermissible consideration such as race." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978). Moreover, when hiring decisions are involved, the employer need not show that the person chosen over the plaintiff had superior qualifications, so long as the decision is not based on unlawful criteria. Burdine, 450 U.S. at 259 (the fact that a court may think that the employer misjudged the qualifications of the applicants does not itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination).

Here, Ms. Marcus contends that Dr. Zandell discriminated against her by: (1) delaying her performance evaluations; (2) preventing her from receiving performance-based bonuses by giving her low performance ratings; (3) unjustly allocating work to her; (4) preventing her from taking advantage of training opportunities within Hines Hospital; (5) sending threatening e-mails; and (6) thwarting her attempts to transfer out of the HCESD.[4] Furthermore, Ms. Marcus alleges that Ms. Jaycox harassed and discriminated against her by unjustly calling the Hines Hospital Police after they had an argument. The Court will apply the above relevant standards to each of these allegations separately.

First, Ms. Marcus contends that Dr. Zandell's delay in completing Ms. Marcus'

---

[4]     The Second Amended Complaint also alleges the Dr. Zandell discriminated against her by refusing to allow her to adjust her work schedule to attend night school, even though Dr. Zandell made such allowances for Caucasian employees. Although not discussed by either of the parties, this Court finds that this allegation does not meet the prima facie burden because Ms. Marcus has not put forth any evidence to show that this decision was an adverse employment action or that similarly situated employees were allowed time off to attend night school.

performance evaluation and rating Ms. Marcus' work performance as "fully satisfactory" indicate

retaliatory and discriminatory conduct.[5]  Under the McDonnell Douglas burden shifting

framework, the Secretary need only offer a legitimate, non-discriminatory reason to shift the

burden back to Ms. Marcus, who must then show that this conduct was discriminatory in spite of

the reason articulated.  The Secretary has offered detailed explanations for Dr. Zandell's

employment decisions regarding Ms. Marcus' evaluations.  For example, Dr. Zandell delayed

Ms. Marcus' evaluation to allow her time to assess Ms. Marcus' proficiency in Microsoft Word

and Excel.  Moreover, the record indicates that, while the evaluation might have been completed

later than Ms. Marcus would have wished, it was completed within the period allowed by Hines

Hospital for such evaluations, and that the tardy submission did not result in any adverse

consequences for Ms. Marcus.  Likewise, Dr. Zandell justified her "fully satisfactory" rating of

Ms. Marcus by stating that, while Ms. Marcus was performing her duties in an acceptable

manner, she frequently found spelling and formatting errors in Ms. Marcus' work.

By offering these explanations, the Secretary has shifted the burden back to Ms. Marcus.

Ms. Marcus, however, has not contradicted these explanations, nor offered this Court any

evidence that shows that these explanations are false or pretextual.  Likewise, neither the ALJ nor

the EEO investigator found any indication that the delay in completing the evaluations or the

evaluations themselves constituted discrimination.

Moreover, even if Dr. Zandell's evaluations of Ms. Marcus were unjustified, negative

---

[5]       In April 1997, Hines Hospital changed its performance evaluation system from a five-tiered system running from "outstanding" to "unacceptable" to a two-tiered system of "successful" or "unacceptable."  Under the five-tiered system, Dr. Zandell consistently rated Ms. Marcus "fully satisfactory," the middle category, and under the two-tiered system consistently rated her "successful."

11

performance evaluations alone are generally not sufficient to support a Title VII claim, particularly where the employee is not automatically entitled to a bonus. See Oest v. Ill. Dept. of Corrections, 240 F.3d 605, 613 (7th Cir. 2001); Speer v. Rand McNally & Co., 123 F.3d 658, 664 (7th Cir. 1997); Rabinovitz v. Pena, 89 F.3d 482, 488-89 (7th Cir. 1996); Smart, 89 F.3d at 488-89.

Thus, because this Court finds that Ms. Marcus has failed to show adverse employment action or that the Secretary's employment decisions were pretextual, this Court holds that Ms. Marcus has failed to sufficiently demonstrate as a matter of law that she was discriminated against based on her performance evaluations.

Additionally, Ms. Marcus contends that, because of the evaluations discussed above, she did not receive monetary bonuses which are awarded to employees whose job performance is rated "outstanding." Hines Hospital's practice was to award monetary bonuses to employees whose evaluations indicated "outstanding" performance, and Ms. Marcus argues that its failure to award her a bonus, while awarding her co-worker, Ms. Svaldi, a bonus, is evidence of discrimination and retaliation. As discussed above, this Court finds that Ms. Marcus has failed to prove that she was discriminated against based on her performance evaluations, and therefore, her not receiving a bonus based on these evaluations likewise does not constitute discrimination.

Moreover, this Court finds that Ms. Marcus has failed to present any evidence which would support a finding that she and Ms. Svaldi are "similarly situated" employees. Ms. Marcus has only shown that one employee, Ms. Svaldi, received a performance bonus. However, Ms. Marcus has failed to show that Ms. Svaldi is similarly situated. As explained above, their job titles, descriptions, and responsibilities differ and their positions are on different pay scales. Ms.

12

Marcus is a "secretary" with responsibilities for the affiliation program for nursing students and is paid on the GS–5 pay scale. Ms. Svaldi, on the other hand, is a "clerk typist" with responsibilities for the orientation program and is paid on the lower GS–4 pay scale. Their distinct work responsibilities and different pay grades indicate that they are not similarly situated vis-á-vis one another with respect to Dr. Zandell's evaluations of their performance.

Additionally, the Seventh Circuit has held that, where an employee is not automatically entitled to a monetary bonus, the loss of that bonus is not an adverse employment action. Rabinovitz, 89 F.3d at 488-89; Smart, 89 F.3d at 488-89. Accordingly, Dr. Zandell's ratings of Ms. Marcus and the VA's consequent failure to award her bonuses cannot be construed as an adverse employment action.

Ms. Marcus also contends that the additional work assigned to her by Dr. Zandell and Ms. Jaycox constituted discrimination and retaliation against her. However, an "employee doesn't get to write his own job description," Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1571 (7th Cir. 1989), and "it is no business of a court in a discrimination case to decide whether an employer demands 'too much' of his workers" so long as the expectations and demands are not discriminatory or retaliatory. Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir. 1997).

Here, Dr. Zandell has articulated a clearly non-discriminatory and non-retaliatory reason for Ms. Marcus' increasing workload: she explained that, when Ms. Marcus first started in the HCESD, she wanted to allow Ms. Marcus time to adjust to her new position and learn it before all the duties in her position description were transferred to her. Dr. Zandell also explained that, because Ms. Marcus' position had been vacant for a substantial time before Ms. Marcus filled it, Ms. Svaldi and others in the HCESD had all picked up the work for that position.

While a decrease in workload and job responsibilities may be evidence that an employee has been discriminated or retaliated against, <u>Dahm v. Flynn</u>, 60 F.3d 253 (7th Cir. 1995), progressively assigning a new employee the duties encompassed in her job description cannot support a claim of discrimination or retaliation. <u>See</u> <u>Coco</u>, 128 F.3d at 1179. Moreover, as detailed above, because Ms. Marcus was paid at a full pay grade above Ms. Svaldi, Ms. Marcus cannot prove that a similarly situated employee was treated more favorably than she was.

Next, Ms. Marcus contends that Dr. Zandell discriminated and retaliated against her by preventing her from taking advantage of training opportunities within the VA. To show that she was discriminated against as to training opportunities, Ms. Marcus must show that she was denied access to training allowed to other similarly situated employees. However, as discussed above, Ms. Svaldi, to whom Ms. Marcus compares herself, is not similarly situated with respect Ms. Marcus, and therefore, she cannot make a prima facie case of discrimination. <u>Radue</u>, 219 F.3d at 618.

However, even if the Court grants that, for this purpose, Ms. Marcus and Ms. Svaldi are similarly situated, the record undermines rather than supports Ms. Marcus' allegations. Hines Hospital's employee training records indicate that between September 1, 1995 and September 30, 1997, Ms. Marcus completed 93 hours of training within the VA system, whereas Ms. Svaldi completed only 28 hours in the same period. Under these facts, Ms. Marcus cannot seriously contend that she was retaliated against in her access to training opportunities.

Moreover, the one class that Ms. Marcus was not allowed to attend, which Ms. Svaldi did, focused on the "ETS" system which Ms. Svaldi used for the majority of her work. Dr. Zandell explained that Ms. Marcus was needed to perform secretarial duties while Ms. Svaldi

was at the training, but that Ms. Marcus was free to take the course at a later date. Again, Ms. Marcus has done nothing to indicate that this explanation is false or pretextual, and therefore cannot survive summary judgment under <u>McDonnell Douglas</u>. 411 U.S. at 802.

Ms. Marcus also contends that e-mails from Dr. Zandell demonstrate that she was discriminated and retaliated against. To support this claim, she attaches copies of three e-mails, but only two of those are from Dr. Zandell. These e-mails, however, state that they are "formal counseling" and simply express Dr. Zandell's dissatisfaction with Ms. Marcus' work performance and attitude, and explicitly state that they will *not* be placed in her personnel file. Thus, because the e-mails were not placed in her file, they do not constitute an adverse employment action. <u>Ribando v. United Airlines, Inc.</u>, 200 F.3d 507, 510-11 (7th Cir. 1999).

Ms. Marcus further contends that the fact she was denied a transfer to a different position within Hines Hospital and other government agencies shows that she was discriminated and retaliated against. Ms. Marcus applied, via an undated letter to the Hines Human Resources Department, for various clerical positions within Hines Hospital. She also requested a transfer during a May 2, 1997 meeting with the ACOS for Research and Education Service, Dr. Terranova. On May 20, Dr. Terranova replied, stating that, due to a funding freeze, no permanent transfers were available at that time, and that, while she could transfer to a temporary position, she might be "bumped" to a different area during a reduction in force. In response to Dr. Terranova's letter, Ms. Marcus wrote to Brian House, an EEO counselor at Hines, stating that "I trully [sic] do not want to be placed into a temporary position. I like the work that I am doing and know that I am doing it very well." She further stated that her work atmosphere had improved, though she still felt she was being treated unfairly and wanted to proceed with her

15

complaint to the Department. Thus, for these positions, at least, Ms. Marcus cannot argue that she was denied the position(s) for which she applied; rather, she rejected them herself because they were temporary positions and would make her subject to bumping during a reduction in force.[6]

Moreover, in his deposition, Michael Huck, who is both the Administrative Officer for the Educational Division of Hines' Research and Education service and the Section Chief of the Staff Development and Training Section of the Education Division, explained why Ms. Marcus was not selected for another of the positions for which she applied[7]: He stated

> I did a performance based interviewing thing with all my candidates, and I had what they call a right person profile of what the ideal candidate would look like. And then I took my information from all of the candidates and lined it up against that, and there were two candidates that had met all the right person kind of things, all the knowledge, skills, abilities that were higher than her for that.
> I offered the position to one person from outside the VA, they didn't take it. Then I took the next person down, and they took it.

(Huck 26:6-17 (Mar. 9, 2001).) The Secretary has, therefore, articulated a legitimate, non-discriminatory reason for not hiring Ms. Marcus for this position, and thereby shifted the burden back to Ms. Marcus. Ms. Marcus, however, has failed to show that this explanation is false, and therefore, cannot survive summary judgment with respect to this allegation. Moreover, the Court notes that, in one case, according to Ms. Marcus' own testimony, the position for which she applied was filled by an African-American man.

---

[6] As for Ms. Marcus' contention that Ms. Jaycox successfully transferred out of HCESD, the record reveals that Ms. Jaycox transferred to a temporary position within Hines – precisely the kind of position which Ms. Marcus refused to accept.

[7] Mr. Huck was unable to remember the title of the position for which Ms. Marcus applied, but stated that it was either program assistant or program analyst, that the position was secretarial in nature, and that it was on the GS–6 salary scale.

As to possible employers outside of the VA, Ms. Marcus does not provide information

for this Court to assess her applications with respect to her applications to the Immigration and

Naturalization Department and the Census Bureau. Moreover, even if she had, it is for those

agencies, not the Secretary, to explain or defend their hiring decisions.

Finally, Ms. Marcus alleges that Ms. Jaycox harassed and discriminated against her by

unjustly calling the Hines Hospital Police after they had an argument. The Director contends

that Ms. Jaycox called the Hines police because she was frightened of Ms. Marcus as a result of

the argument. Because the police did not take any action against Ms. Marcus and because Ms.

Marcus has not shown that Ms. Jaycox's decision to call the police was pretextual, this Court

finds that this incident does not constitute actionable discrimination.

Accordingly, the Court finds that summary judgment is appropriate as to Ms. Marcus'

claims for discrimination because: (1) Ms. Marcus has failed to demonstrate adverse employment

action or that the Secretary treated similarly situated employees more favorably; and (2) even if

she could demonstrate these requirements, Ms. Marcus has failed to demonstrate that the

Director's legitimate, non-discriminatory reasons explaining the conduct about which Ms.

Marcus complains is pretextual.

## II.    Racial and Religious Harassment

Ms. Marcus also alleges that she was harassed because of her race and religion.

To establish a prima facie case of racial and religious harassment, a plaintiff must show: (1)

harassment because of her membership in a protected class, Oncale v. Sundowner Offshore

Serv., Inc., 523 U.S. 75, 81 (1997), that (2) was severe and pervasive enough to alter the

plaintiff's working conditions, Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1986), (3)

17

which was unwelcome, id. at 68, and (4) the employer did not act promptly to effectively correct or prevent the harassment. Saxton v. Am. Tel. & Tel. Co., 10 F.3d 526, 535-36 (7th Cir. 1993).

In Meritor, the Supreme Court established that "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive to 'alter the conditions of the victim's employment and create an abusive work environment.'" 477 U.S. at 67 (citation omitted). However, the Court has also noted that

> ... Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatory abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers.

Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993). While the Court has been sympathetic to harassment claims, it has also expressed the desire to limit Title VII's applicability to conduct which is actually hostile and discriminatory: "the plaintiff ... must always prove that the conduct at issue was not merely tinged with offensive ... connotations, but actually constituted 'discrimination ... because of ... [membership in the protected class].'" Oncale, 523 U.S. at 81 (emphasis in original).

In determining whether conduct is severe and pervasive enough to alter the conditions of employment and create a hostile work environment, courts consider both the actual effect of the conduct on the plaintiff (the subjective test) and what the effect would be on a reasonable person in the plaintiff's position (the objective test). Rodgers, 12 F.3d at 674. Whether conduct is objectively hostile or abusive must be determined "by looking [at the conduct under] all the circumstances." Harris, 510 U.S. at 23. Factors that are relevant in determining whether a reasonable person would find conduct hostile are the frequency of the conduct, its severity,

18

whether it is "physically threatening or humiliating, or a mere offensive utterance," and whether it interferes with the employee's work performance. Id. The Seventh Circuit has held that isolated remarks or incidents are insufficient to establish a hostile work environment. Filipovic v. K&R Exp. Sys., Inc., 176 F.3d 390, 398 (7th Cir. 1999) (four national origin related comments made over the course of more than a year not sufficient to create a hostile environment) (Rabinovitz, 89 F.3d at 489 ("an employee may not be unreasonably sensitive to his working environment"); Saxton, 10 F.3d at 535 ("inaccessibility, condescension, impatience, and teasing" were "'merely offensive'"); North v. Madison Area Assn. for Retarded Citizens – Dev. Centers Corp., 844 F.2d 401, 409 (7th Cir. 1988) (sporadic use of racial epithets and slurs were insufficient to support a Title VII claim). However, repeated instances of such conduct may be aggregated to support a hostile environment claim. Hostetler v. Quality Dining, Inc., 218 F.3d 798, 808 (7th Cir. 2000) ("There is no 'magic number' of incidents required to establish a hostile environment").

Here, Ms. Marcus is clearly a member of a protected class, and the parties do not dispute that Dr. Zandell treated Ms. Marcus poorly. However, poor treatment alone is not enough to support a racial harassment claim. Uhl, 121 F.3d at 1137. Rather, the employee must also show that the treatment was because of her membership in a protected class. Oncale, 523 U.S. at 81. Ms. Marcus' claim thus fails on the second element of the prima facie case because she cannot show that Dr. Zandell's poor treatment of her was due to her race or religion. There is ample evidence in the record that Dr. Zandell treated all her employees poorly and had poor management and interpersonal skills. Indeed, every employee who worked under Dr. Zandell in this period complained about her treatment of him or her, with the exception of Ms. Svaldi, who

19

is described as being timid and agreeable. Moreover, even other African-American employees stated that Dr. Zandell did not discriminate on the basis of race, but rather that she treated everyone poorly regardless of race. Ms. Marcus has not introduced any evidence that contradicts this overwhelming evidence that Dr. Zandell is simply an unpleasant individual and a difficult supervisor. Moreover, as discussed in section (I) above, the Director has provided legitimate, non-discriminatory and non-harassing reasons to explain the conduct about which Ms. Marcus complains. Accordingly, this Court finds Ms. Marcus has failed to demonstrate that she was harassed because of her race.

As for Ms. Marcus' claim that she was harassed because of her religion, she has only put forth two incidents of such harassment: (1) Ms. Garth, a VA EEO officer, exploited Ms. Marcus' religious beliefs by asking her, along with Dr. Zandell and Ms. Jaycox, to swear on a Bible to resolve their differences; and (2) Ms. McCullen, another VA EEO officer, told Ms. Marcus that people at Hines Hospital did not like her "church lady act."

Assuming that these incidents occurred, while they may have legitimately offended Ms. Marcus, this Court finds that these isolated incidents are far from being severe and pervasive enough to alter Ms. Marcus' work conditions so as to create a hostile work environment under Title VII.

Consequently, this Court finds that Ms. Marcus has failed as a matter of law to demonstrate that she suffered pervasive enough harassment based on her race or religion to support a claim for hostile work environment based on either racial or religious harassment.

## III.    Retaliation

Title VII provides that

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  To state a claim of retaliation under Title VII, a plaintiff must show that she "(1) engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between her protected expression and the adverse action." McKenzie v. Ill. Dept. of Trans., 92 F.3d 473, 483 (7th Cir. 1996).  Once the plaintiff establishes the above requirements, the defendant then has the burden to articulate a legitimate, non-discriminatory reason for its actions.  McDonnell Douglas, 411 U.S. at 802-03.  If the defendant meets this burden, then the plaintiff must show that its proffered reason is false or pretextual.  Id. at 804-05.  If the plaintiff cannot show pretext, then it cannot proceed with its retaliation claim and summary judgment is appropriate.  Id.

Here, Ms. Marcus contends that, as a result of her statutorily protected conduct in reporting the alleged discrimination, Dr. Zandell retaliated against her by delaying her performance evaluations, not awarding her monetary bonuses for excellent work performance, unfairly assigning her additional work, preventing her from taking advantage of training opportunities at Hines Hospital, threatening her, and thwarting her attempts to transfer out of HCESD.  As discussed above, this Court finds that these alleged incidents are either not adverse employment actions or Ms. Marcus has failed to show that Defendants' legitimate proper reasons for the above actions were pretextual, and therefore, the Court finds that the above incidents do not constitute retaliation.

However, this Court will examine Ms. Marcus' contention that, due to her complaint to the Department alleging discrimination, she was denied a transfer to a different position within Hines Hospital or another government agency because Dr. Zandell informed three prospective employers of Ms. Marcus' EEO activity. Ms. Marcus contends that this constitutes an adverse employment action in retaliation for conduct protected by Title VII.

While Dr. Zandell has admitted to disclosing this information about Ms. Marcus' EEO claims to those with whom she applied for a position, she explained that she did so because she felt that it was relevant to her work attendance due to the time she spent pursuing the suit. She also stated that she felt it was relevant to a question she was asked regarding Ms. Marcus' cooperation with others in the HCESD.

Informing a prospective employer of an employee's EEOC charge is sufficient to constitute an adverse employment action under Title VII. Czarnowski v. Desoto, Inc., 518 F. Supp. 1252, 1259 (N.D. Ill. 1981). See also Hashimoto v. Dalton, 118 F.3d 671, 677 (9th Cir. 1997); Rutherford v. American Bank of Commerce, 565 F.2d 1162, 1164-65 (10th Cir. 1977). Thus, with respect to this incident, Ms. Marcus has established the first two elements of her prima facie case – participation in a protected activity and an adverse employment action. See McKenzie, 92. F.3d at 483. The third element, a causal connection between the protected activity and the adverse employment action, is a question of fact and cannot, therefore, be decided in a summary judgment proceeding.

Consequently, this Court DENIES summary judgment as to Count III regarding Dr. Zandell's disclosure of Ms. Marcus' discrimination complaint to prospective employers.

22

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [41-1] is

GRANTED IN PART as to Counts II and III AND DENIED IN PART as to Count I.

ENTER

Blanche M. Manning
**BLANCHE M. MANNING**
**U.S. DISTRICT COURT JUDGE**

DATE: 5-23-02